IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| Drew Whitley | ) | |
| --- | --- | --- |
| | ) | |
| PLAINTIFF, | ) | |
| vs. | ) | NO.: |
| | ) | |
| ALLEGHENY COUNTY; | ) | |
| THOMAS M. FITZGERALD, individually and | ) | |
| as a detective for ALLEGHENY COUNTY; | ) | |
| ROBERT LAZARRO, individually and as a | ) | |
| detective for ALLEGHENY COUNTY; | ) | |
| HERB FOOTE, individually and as a | ) | |
| detective for ALLEGHENY COUNTY; | ) | |
| LEE TORBIN, individually and as a | ) | |
| detective for ALLEGHENY COUNTY; | ) | |
| JOHN MARKLE, individually and as a | ) | |
| detective for ALLEGHENY COUNTY; | ) | |
| ROBERT PAYNE, individually and as a | ) | |
| detective for ALLEGHENY COUNTY; and, | ) | |
| SANDFORD A. MIDDLEMAN, Esquire | ) | |
| | ) | |
| DEFENDANTS. | ) | JURY TRIAL DEMANDED |

**COMPLAINT**

Plaintiff, Drew Whitley, herein, by and through his attorney, Lawrence H. Fisher, Esquire, files the following Complaint and civil action, and in support thereof, avers:

**PARTIES**

1.     Plaintiff, Drew Whitley, is an adult individual currently residing in Braddock, Allegheny County, Pennsylvania, and he is a resident of this judicial district.

2.     Defendant, Allegheny County, is a governmental entity which, pursuant to state law, and with receipt of substantial amounts of federal funds, provides homicide law enforcement services in Allegheny County, Pennsylvania, specifically in the municipality of

1

Duquesne, Pennsylvania, and is located in, Allegheny County Pennsylvania 15132.

3. Defendant, Thomas M. Fitzgerald, is an adult individual who, at all times material hereto was acting individually, as well as in his capacity as and Allegheny County homicide detective for the county police, currently residing at 277 Jasper Street, Pittsburgh, Allegheny County, Pennsylvania 15211.

4. Defendant, Robert Lazarro, is an adult individual who, at all times material hereto was acting individually, as well as in his capacity as an Allegheny County homicide detective for the county police, currently residing at 1328 Pocono Street, Pittsburgh, Allegheny County, PA 15218.

5. Defendant, Herbert Foote, is an adult individual who, at all times material hereto was acting individually, as well as in his capacity as an Allegheny County homicide detective for the county police, currently residing at 602 Clifford Road, Bethel Park, Allegheny County, PA 15102

6. Defendant, Lee Torbin, is an adult individual who, at all times material hereto was acting individually, as well as in his capacity as an Allegheny County homicide detective for the county police, currently residing at 2492 Donnellsville Road, Natrona Heights, Allegheny County, PA 15065.

7. Defendant, Robert Payne, is an adult individual who, at all times material hereto was acting individually, as well as in his capacity as an Allegheny County homicide detective for the county police, currently residing at 117 College Park Drive, Monroeville, Allegheny County, PA 15146

8. Defendant, John Markle, is an adult individual who, at all times material hereto

was acting individually, as well as in his capacity as an Allegheny County homicide detective for the county police – his present whereabouts are unknown to Plaintiff, but otherwise known to Defendant Allegheny County.

9. Defendant, Sandford A. Middleman, Esquire, is an adult individual who, at all times material hereto was acting individually, as well as professionally in his capacity as a licensed attorney, with offices located at Malone & Middleman, 117 VIP Drive, Ste. 310, Wexford, Allegheny County, PA 15090.

## JURISDICTION and VENUE

10. Jurisdiction is vested in the United States District Court for the Western District of Pennsylvania by virtue of Plaintiff's claims pursuant to 29 U.S.C. § 1331 and 42 U.S.C. § 1983 – federal questions concerning civil rights. Plaintiff also invokes the supplemental jurisdiction of this Honorable Court to hear all pendent state law claims. Venue is appropriate as all matters complained about pertain to occurrences in this Judicial District, specifically, Allegheny County.

## COUNTS I
**Plaintiff v. Allegheny County, Thomas M. Fitzgerald, Robert Lazzaro, Herb Foote, Lee Torbin, John Markel, and Robert Payne**
**42 U.S.C. § 1983 - Violations of Plaintiff's Civil Rights – Deprivation of Liberty Without Due Process of Law – Malicious Prosecution – and Denial of the Right to a Fair Trial**

11. The Plaintiff incorporates herein, as though set out in full, Paragraphs One through Ten of his Complaint.

12. On August 17, 1988 Plaintiff was detained on an unrelated criminal matter, but questioned extensively by the Allegheny County homicide detectives named herein, concerning the murder of Noreen Malloy earlier that same morning; Plaintiff was thereafter questioned

3

about this murder repeatedly and at all times was cooperative maintaining his absolute innocence.

13. Nearly six months later, on or about February 10, 1989, these Defendants maliciously instituted criminal proceedings against Plaintiff without probable cause and Plaintiff was charged by the Allegheny County homicide detectives named herein with the crime of murder (and other related offenses) pursuant to an arrest warrant obtained by these Defendants – Commonwealth vs. Drew Whitley, Allegheny County Court of Common Pleas, Docket Number: CP-02-CR-0002906-1989 – alleging that Plaintiff shot Noreen Malloy to death in the wee hours of the morning on August 17, 1988; thereafter, Plaintiff was wrongfully convicted of this murder.

14. More than eighteen years after Plaintiff was wrongfully convicted of the above referenced murder, these criminal proceedings were terminated entirely in Plaintiff's favor and all charges against the Plaintiff were *nolle prossed* by the Allegheny County Court of Common Pleas on May 1, 2006, and Plaintiff obtained a complete acquittal of all charges against him.

15. At all times material to this Complaint, the Allegheny County homicide detectives identified herein operated under the supervision and control of Allegheny County, and the actions of these Allegheny County homicide detectives were taken on behalf of themselves, individually and collectively, as well as in their capacity as Allegheny County homicide detectives, and reflected the policy and procedures of these Defendants.

16. These Defendants, individually, and in a conspiracy with each other, violated Plaintiff's rights under the Fourteenth Amendment of the United States Constitution and deprived Plaintiff of his liberty without due process of law by instituting charges against him

without probable cause and with malice, vengeance, and bias such that Plaintiff was maliciously prosecuted for a crime which he did not commit and which these Defendants knew or should have known that he did not commit, and these Defendants deprived Plaintiff of his right to a fair trial.

17. The criminal proceedings instituted by the Defendants herein were undertaken maliciously, vengefully, and with bias, and are alleged to have violated Plaintiff's constitutional rights, deprived Plaintiff of a fair trial and of liberty without due process of law, and lacked probable cause for the following reasons:

- a) These Defendants knew or should have known, or recklessly disregarded the fact that there was no basis – let alone one iota of physical evidence – supporting the charges against Plaintiff;

- b) These Defendants refused to test Plaintiff for gun shot residue when he was interviewed by them within hours of the crime in question, and where he was suspected to have fired the murder weapon with his bare hands, and were racially biased in their disregard for Plaintiff's repeated assertions of innocence, as well as his repeated requests for such testing to demonstrate his innocence;

- c) These Defendants refused to administer a lie detector test to Plaintiff, ignoring with great racial bias his repeated assertions of innocence, as well as requests for such testing to demonstrate his innocence

- d) These Defendants failed to test for genetic material under Plaintiff's finger nails whereas the murder victim had been scratched during the crime in question, and despite the fact that such testing demonstrated Plaintiff's innocence, because they were racially biased in wrongfully believing that Plaintiff was guilty of this crime;

- e) These Defendants failed to analyze available fingerprint evidence from others suspected of this crime in comparison to fingerprint evidence found on articles belonging to the victim and located at the scene of the crime, as well as the victim's fingerprints, evincing further racial bias against Plaintiff;

- f) These Defendants failed to test a trench coat for gun shot residue where

5

the trench coat was allegedly worn by the true perpetrator of Noreen Malloy's murder, further reflecting a racial bias against Plaintiff;

g) These Defendants repeatedly and maliciously ignored evidence exculpating Plaintiff, to wit, a hat worn by the assailant was more than an inch smaller in circumference than the circumference of Plaintiff's head;

h) These Defendants repeatedly and maliciously ignored evidence exculpating Plaintiff, to wit, footprints at the scene of the crime did not match the print of the shoes allegedly worn by Plaintiff on the night of the crime;

i) These Defendants repeatedly and maliciously ignored evidence exculpating Plaintiff, to wit, no murder weapon was ever found, and it was not established that Plaintiff even owned a gun;

j) These Defendants repeatedly and maliciously ignored evidence exculpating Plaintiff, to wit, saliva on cigarette butts found at the scene of the crime and believed to belong to the murderer did not match Plaintiff's saliva;

k) These Defendants repeatedly and maliciously ignored evidence exculpating Plaintiff, to wit, saliva on the mask worn by the murderer did not match Plaintiff's saliva;

l) After Plaintiff was racially targeted in this case, these Defendants pressured a witness to falsely identify Plaintiff as the perpetrator of this crime, whereas this witness was initially interviewed and was unable to identify Plaintiff as such, and these Defendants otherwise relied on vastly contradictory as well as inconsistent statements by this witness, further indicating their racial bias against Plaintiff;

m) For one of many examples, the witness pressured to identify Plaintiff as the murder claimed he observed the murder weapon to be a .22 caliber gun, whereas the actual murder weapon was determined to be a .25 caliber gun;

n) These Defendants failed to investigate leads that others were suspected of this crime, further reflecting their racial bias against Plaintiff;

o) During the time that Plaintiff was incarcerated on unrelated charges, these Defendants further procured false evidence against Plaintiff by participating in efforts to reduce a death sentence to life imprisonment for a jailhouse snitch convicted of an unrelated murder in exchange for perjured testimony by this snitch that Plaintiff allegedly confessed to the

6

murder of Noreen Malloy;

p)   These Defendants vengefully concealed from Plaintiff their actions as indicated in subparagraph (o) above such that Plaintiff was not permitted to cross-examine this jailhouse snitch at trail in regard to the inducement for his perjured testimony, and thereafter Plaintiff's direct appellate rights were compromised because the Superior Court of Pennsylvania concluded that no such deal with the jailhouse snitch could have been made when, in fact, the jailhouse snitch is now serving life in prison and is no longer on death row as a result of this concealed deal;

q)   In fact, Department of Corrections records document that the Plaintiff and this jailhouse snitch were never in the same lockup together such that this jailhouse snitch could not have ever spoken with Plaintiff, and these Defendants with full awareness vengefully concealed this evidence from Plaintiff;

r)   Moreover, when the Allegheny County District Attorney prosecuted this jailhouse snitch prior to the malicious prosecution of Plaintiff, and for an unrelated murder, the District Attorney incongruously asserted that the snitch's testimony in his own defense was utterly without veracity, but this information was vengefully concealed from Plaintiff by these Defendants.

s)   In addition, these Defendants lied about their deal with the jailhouse snitch – not only to Plaintiff, but also to the Allegheny County Court of Common Pleas and the Superior Court of Pennsylvania.

t)   These Defendants maliciously assembled pseudo scientific evidence to wrongfully implicate Plaintiff in the death of Noreen Malloy;

u)   These Defendants maliciously relied upon pseudo science to secure the wrongful conviction of Plaintiff;

v)   These Defendants vengefully concealed, mishandled, and/or failed to preserve evidence such that Plaintiff spent years in jail awaiting genetic testing because these Defendants lied and claimed that this evidence had been lost in a flood when it had not, and when it was ultimately uncovered it proved Plaintiff's innocence;

w)   These Defendants demonstrated racial bias against Plaintiff and thereby wrongly prejudged his guilt because Plaintiff is an African American with a prior criminal record;

x)   Defendant Allegheny County demonstrated a racist bias against African Americans such as Plaintiff and failed to adequately train these Detectives

7

                in proper, unbiased investigative techniques and procedures.

      y)      Defendant Allegheny County violated Defendant's constitutional rights to adequate counsel concerning this wrongful prosecution insofar as the attorneys appointed to defend him – and paid for by Allegheny County – were incompetent and willfully disregarded his rights;

      z)      The Defendants otherwise acted vengefully, with bias, and in violation of Plaintiff's constitutional rights.

18.     As a consequence of the acts and omissions complained of herein, Plaintiff was damaged and suffered by reason thereof, at least as follows: extreme indignities, assault, battery, prolonged false imprisonment, physical injury, humiliation, severe emotional distress, mental anguish, loss of liberty and freedom, loss of standing in the community, loss of income, and has been held up to ridicule before his peers, and has been deprived of his constitutional rights to be free and clear of the above deprivations – and all of the Defendants named in this Count, by the above allegations, increased these harms suffered by Plaintiff.

19.     All of the allegation against the Defendants herein reflect deliberate indifference to the rights and claims of the citizens of Allegheny County and Plaintiff.

20.     Allegheny County knew, or should have known, that these detectives were not properly supervised/trained.

21.     These failures of Defendant, Allegheny County, were due to a custom or policy of indifference to the necessity for adequate supervision and training in homicide investigations.

22.     In light of the investigative responsibilities assigned to the Allegheny County Homicide Division, the need for more or different training was obviously necessary in murder investigations, and its inadequacy was so likely to result in prolonged harm to those wrongfully accused, that Allegheny County as policymaker was deliberately indifferent to this festering

8

racism, bias, and malice among the ranks of its detectives.

23. The acts of the Defendants herein were undertaken with the purpose and the intent of depriving the Plaintiff of his right to a fair trial under the United States Constitution and of the right not to be deprived of liberty without due process of law in violation of the Fourteenth Amendment to the United States Constitution.

24. Thus, Allegheny County, at all times relevant hereto, had a policy and/or custom of acquiescing in unconstitutional practices in these circumstances which thoroughly corrupted law enforcement and allowed these constitutional abuses to occur as alleged herein.

25. Furthermore, Allegheny County, at all times relevant hereto, had a policy and/or custom of inadequate response to, and investigation of, citizen complaints and ineffective and inadequate discipline of offending officers which thoroughly corrupted law enforcement and allowed the constitutional abuses to occur as alleged herein.

26. In addition, by failing to adequately train and/or supervise these detectives, Allegheny County enhanced and created the danger that Plaintiff would suffer the harm he suffered, and the risk of these constitutional violations suffered by the Plaintiff would have been eliminated, or minimized, by proper training and supervision.

27. These detectives knew or should have known that they lacked the competence necessary for the performance of their duty to investigate the murder of Noreen Malloy, and were recklessly indifferent in failing to undertake these responsibilities, as well as intentionally indifferent in failing to perform a competent investigation of Plaintiff's innocence.

28. The actions of these detectives, jointly and severally, are wanton, and entitle the Plaintiff to an award of exemplary and punitive damages.

29. Furthermore, because these Defendants concealed their deal with the jailhouse snitch, claimed to have lost evidence that was never lost, and otherwise acted as indicated in paragraph seventeen above, and because they provided Plaintiff with inferior counsel through out the criminal proceedings brought against Plaintiff, as well as further detailed in count IV hereinafter, extraordinary circumstances prevented Plaintiff from pursuing his right to vindicate the civil rights violations against him insofar as they are predicated on a violation of his rights, notwithstanding his utmost diligence in said pursuit, such that justice merits equitable tolling of the statute of limitations in this matter.

WHEREFORE, the Plaintiff prays that this Honorable Court enter judgment against the Defendants herein, in an amount to be determined by this Court, plus costs, interest, and attorney's fees.

## COUNT II

### Plaintiff v. Thomas M. Fitzgerald, Robert Lazzaro, Herb Foote, Lee Torbin, John Markle, and Robert Payne
### MALICIOUS PROSECUTION - Pendent State Law Claims

30. The Plaintiff incorporates herein as though set out in full, Paragraphs One through Twenty-Nine of his Complaint.

31. On or about February 10, 1989, the Defendants named herein initiated criminal proceedings against Plaintiff herein, made and swore to a criminal complaint – and/or prior to and after February 10, 1989 acted in pursuit of prosecuting said criminal complaint – in which these defendants falsely, maliciously, vengefully, and with racist bias, but without probable cause, accused Plaintiff of murder.

32. Thereafter, Plaintiff was tried and wrongfully convicted of the criminal charge

10

falsely and maliciously prosecuted by these Defendants, and for which the Plaintiff suffered 18 years wrongly imprisoned for a crime he did not commit.

33. Plaintiff's conviction was ultimately overturned and the charges against him were *nolle prossed* as Plaintiff was absolutely innocent of the crime charged such that the criminal proceedings initiated against Plaintiff were terminated entirely in his favor.

34. Each and every accusation and allegation by these Defendants and contained in the criminal complaint at issue were, and are, false, malicious, biased, vengeful, and without probable cause and the criminal proceedings instituted by the Defendants herein were undertaken maliciously, vengefully, and with bias, and are alleged to have lacked probable cause for the following reasons:

   a) These Defendants knew or should have known, or recklessly disregarded the fact that there was no basis – let alone one iota of physical evidence – supporting the charges against Plaintiff;

   b) These Defendants refused to test Plaintiff for gun shot residue when he was interviewed by detectives within hours of the crime in question, and where he was suspected to have fired the murder weapon with his bare hands, in a racially biased disregard for Plaintiff's repeated assertions of innocence, as well as repeated requests for such testing to demonstrate his innocence;

   c) These Defendants refused to administer a lie detector test to Plaintiff, ignoring with great racial bias his repeated assertions of innocence, as well as requests for such testing to demonstrate his innocence

   d) These Defendants failed to test for genetic material under Plaintiff's finger nails whereas the murder victim had been scratched during the crime in question, despite the fact that such testing demonstrated Plaintiff's innocence, because they were racially biased in wrongfully believing that Plaintiff was guilty of this crime;

   e) These Defendants failed to analyze available fingerprint evidence from others suspected of this crime in comparison to fingerprint evidence found on articles belonging to the victim and located at the scene of the crime, as

11

  well as the victim's fingerprints, evincing further racial bias against Plaintiff;

f) These Defendants failed to test a trench coat for gun shot residue where the trench coat was allegedly worn by the true perpetrator of Noreen Malloy's murder, further reflecting a racial bias against Plaintiff;

g) These Defendants repeatedly and maliciously ignored evidence exculpating Plaintiff, to wit, a hat worn by the assailant was more than an inch smaller in circumference than the circumference of Plaintiff's head;

h) These Defendants repeatedly and maliciously ignored evidence exculpating Plaintiff, to wit, footprints at the scene of the crime did not match the print of the shoes allegedly worn by Plaintiff on the night of the crime;

i) These Defendants repeatedly and maliciously ignored evidence exculpating Plaintiff, to wit, no murder weapon was ever found, and it was not established that Plaintiff even owned a gun;

j) These Defendants repeatedly and maliciously ignored evidence exculpating Plaintiff, to wit, saliva on cigarette butts found at the scene of the crime and believed to belong to the murderer did not match Plaintiff's saliva;

k) These Defendants repeatedly and maliciously ignored evidence exculpating Plaintiff, to wit, saliva on the mask worn by the murderer did not match Plaintiff's saliva;

l) After Plaintiff was racially targeted in this case, these Defendants pressured a witness to falsely identify Plaintiff as the perpetrator of this crime, whereas this witness was initially interviewed and was unable to identify Plaintiff as such, and these Defendants otherwise relied on vastly contradictory as well as inconsistent statements by this witness, further indicating their racial bias against Plaintiff;

m) For one of many examples, the witness pressured to identify Plaintiff as the murder claimed he observed the murder weapon to be a .22 caliber gun, whereas the actual murder weapon was determined to be a .25 caliber gun;

n) These Defendants failed to investigate leads that others were suspected of this crime, further reflecting their racial bias against Plaintiff;

o) During the time that Plaintiff was incarcerated on unrelated charges, these

12

|   |   |
|---|---|
|   | Defendants further procured false evidence against Plaintiff by participating in efforts to reduce a death sentence to life imprisonment for a jailhouse snitch convicted of an unrelated murder in exchange for perjured testimony by this snitch that Plaintiff allegedly confessed to the murder of Noreen Malloy; |
| p) | These Defendants vengefully concealed from Plaintiff their actions as indicated in subparagraph (o) above such that Plaintiff was not permitted to cross-examine this jailhouse snitch at trail in regard to the inducement for his perjured testimony, and thereafter Plaintiff's direct appellate rights were compromised because the Superior Court of Pennsylvania concluded that no such deal with the jailhouse snitch could have been made when, in fact, the jailhouse snitch is now serving life in prison and is no longer on death row as a result of this concealed deal; |
| q) | In fact, Department of Corrections records document that the Plaintiff and this jailhouse snitch were never in the same lockup together such that this jailhouse snitch could not have ever spoken with Plaintiff, and these Defendants with full awareness vengefully concealed this evidence from Plaintiff; |
| r) | Moreover, when the Allegheny County District Attorney prosecuted this jailhouse snitch prior to the malicious prosecution of Plaintiff, and for an unrelated murder, the District Attorney incongruously asserted that the snitch's testimony in his own defense was utterly without veracity, but this information was vengefully concealed from Plaintiff by these Defendants. |
| s) | In addition, these Defendants lied about their deal with the jailhouse snitch – not only to Plaintiff, but also to the Allegheny County Court of Common Pleas and the Superior Court of Pennsylvania. |
| t) | These Defendants maliciously assembled pseudo scientific evidence to wrongfully implicate Plaintiff in the death of Noreen Malloy; |
| u) | These Defendants maliciously relied upon pseudo science to secure the wrongful conviction of Plaintiff; |
| v) | These Defendants vengefully concealed, mishandled, and/or failed to preserve evidence such that Plaintiff spent years in jail awaiting genetic testing because these Defendants lied and claimed that this evidence had been lost in a flood when it had not, and when it was ultimately uncovered it proved Plaintiff's innocence; |
| w) | These Defendants demonstrated racial bias against Plaintiff and thereby wrongly prejudged his guilt because Plaintiff is an African American with |

13

        a prior criminal record;

x)    Defendant Allegheny County demonstrated a racist bias against African Americans such as Plaintiff and failed to adequately train these Detectives in proper, unbiased investigative techniques and procedures.

y)    Defendant Allegheny County violated Defendant's constitutional rights to adequate counsel concerning this wrongful prosecution insofar as the attorneys appointed to defend him – and paid for by Allegheny County – were incompetent and willfully disregarded his rights;

z)    The Defendants otherwise acted vengefully, with bias, and in violation of Plaintiff's constitutional rights.

35.    Each and every one of these Defendants acted maliciously with the intent to injure Plaintiff as alleged herein.

36.    By reason of these premises, Plaintiff was damaged and suffered at least as follows: extreme indignities, assault, battery, prolonged false imprisonment, wrongful imprisonment, physical injury, humiliation, severe emotional distress, mental anguish, loss of liberty and freedom, loss of standing in the community, loss of income, and has been held up to ridicule before his peers.

WHEREFORE, the Plaintiff prays that this Court enter judgment against the Defendants herein, in an amount to be determined by this Court, plus costs, and interest.

### COUNT III
### Plaintiff v. Sandford A. Middleman
### PROFESSIONAL NEGLIGENCE - Pendent State Law Claim

37.    The Plaintiff incorporates herein, as though set out in full, Paragraphs One through Thirty-Five of his Complaint.

38.    At all times relevant hereto, Defendant, Sandford A. Middleman was acting pursuant to a privileged and confidential attorney-client relationship established between himself

14

and the Plaintiff as a consequence of this Defendant filing a Praecipe for the Entry if his Appearance on Plaintiff's behalf, in 1993, and purporting to represent Plaintiff for many years thereafter, in the matter of Commonwealth v Drew Whitley, Allegheny County Court of Common Pleas, Docket Number: CP-02-CR-0002906-1989.

39. As part of his responsibilities serving as legal counsel for Plaintiff in this criminal matter, this Defendant had a duty to investigate, as well as advocate, on Plaintiff's behalf, in furtherance of a Petition for Post Conviction Collateral Relief, and to be knowledgeable in this area of the law and science, so as to assist Plaintiff in securing his release from wrongful imprisonment; however, this Defendant failed to perform this duty in reckless and wanton disregard for Plaintiff's interest such that if he had fulfilled his obligations Plaintiff would have been free from prison years earlier than when he was ultimately freed from prison.

40. Notwithstanding his obligations to Plaintiff, this Defendant prolonged Plaintiff's wrongful imprisonment and loss of liberty by delay in his performance of any legal action on Plaintiff's behalf for over two years, and failed to notify Plaintiff of his appointment as his counsel; ultimately Plaintiff was notified by an Order of Court from the Allegheny County Court of Common Pleas that this Defendant had finally begun to undertake his responsibilities on Plaintiff's behalf on June 7, 1995.

41. This Defendant further failed in his obligations by ignoring Plaintiff's repeated letters to him wherein Plaintiff requested participation in, and information about, the proceedings in which this Defendant represented him to no avail; except on one occasion this Defendant did not consult with Plaintiff whatsoever in connection with this representation.

42. The key issue raised in the Petition for Post Conviction Collateral Relief, and

which this Defendant was professionally obliged to pursue, was a request for DNA testing of genetic material identified at the crime scene as belonging to the perpetrator of Noreen Malloy's murder and which ultimately exonerated Plaintiff of this crime.

43. Pursuant to Defendant's representation on behalf of Plaintiff, the Court of Common Pleas for Allegheny County first ordered this DNA testing on November 6, 1995, but the initial testing was inferior by comparison to the state of the art technology that existed in November 1995, and it was this state of the art technology that ultimately and subsequently exonerated Plaintiff years later of the crime for which he was wrongfully imprisoned.

44. Despite the crucial nature of this DNA testing, this Defendant was not aware of "mitochondrial" DNA testing methods that existed in November 1995, and further prolonged Plaintiff's wrongful imprisonment by stipulating to an inferior testing method that failed to yield a conclusive result back then.

45. Thereafter, this Defendant further failed in his obligations to Plaintiff by permitting more than three years to pass before determining that the initial testing method utilized had failed to yield a conclusive result; after learning of this testing failure on November 28, 1998, this Defendant never even notified Plaintiff of this fact, nor his right to appeal this determination.

46. Plaintiff's rights were compromised by this Defendant's failures, neglect, and breach of his responsibilities/obligations to Plaintiff, such that Plaintiff's appellate right to challenge this denial of his first PCRA Petition was almost eviscerated, and these appellate rights had to be reinstated over a year later on December 22, 1999, *nunc pro tunc*, but Plaintiff was not informed about the significance of this event, nor was he advised that counsel securing this *nunc*

*pro tunc* appeal was replacing this Defendant as counsel on his behalf.

47. At all times material hereto the allegations against this Defendant constitute reckless and wanton disregard of Plaintiff's interest, thus, but for the conduct of this Defendant, Plaintiff would have obtained a complete dismissal of the charges against him years earlier than when the pursuit of his second PCRA Petition ultimately freed Plaintiff due to this Defendant's erroneous representation.

48. Furthermore, Plaintiff had no idea what happened as a result of this Defendant's legal representation on his behalf with respect to his first PCRA Petition, nor was he aware until after his release from prison that this Defendant was no longer a part of his second PCRA Petition representation, and even though 2 other lawyers subsequently began working on his behalf to free him from his wrongful imprisonment, Plaintiff believed that this Defendant was still part of his "legal team" until after he was freed from his wrongful imprisonment, as subsequent counsel also failed to communicate with Plaintiff and failed to inform Plaintiff about the nature of legal proceedings advancing on Plaintiff's behalf, nor this Defendant's lack of participation therein.

49. Accordingly, through concealment, this Defendant caused Plaintiff to relax his vigilance and right of inquiry as to the manner in which this Defendant failed Plaintiff such that this Defendant is estopped from invoking the bar of any statute of limitations in this matter.

50. As a consequence of this Defendant's act and omissions Plaintiff has suffered extreme indignities, assault, battery, prolonged abduction, false imprisonment, wrongful imprisonment, physical injury, humiliation, severe emotional distress, mental anguish, loss of liberty, loss of standing in the community, loss of income and has been held up to ridicule before

his peers.

51. Plaintiff possesses an expert opinion from a criminal defense attorney with years of PCRA experience to the effect that this Defendant breached his professional duties to Plaintiff.

WHEREFORE, the Plaintiff prays that this Court enter judgment against the Defendant herein, in an amount to be determined by this Court, plus costs, and interest.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all counts of this Complaint.

Respectfully submitted,

BY: /s/Lawrence H. Fisher
Lawrence H. Fisher
Attorney for Plaintiff
Cohen and Willwerth, P.C.
One Oxford Center
301 Grant Street, Suite 4300
Pittsburgh, PA 15219
(724) 986-9785 tel
(215) 887-8732 fax
Lawfirst@comcast.net
PA ID #67667