IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DREW WHITLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 07-403 |
| ) | |
| ALLEGHENY COUNTY; ) | |
| THOMAS M. FITZGERALD, individually ) | |
| as a detective for Allegheny County; ) | |
| ROBERT LAZARRO, individually and as a ) | |
| detective for Allegheny County; HERB FOOTE, ) | |
| individually and as a detective for ) | |
| Allegheny county; LEE TORBIN, individually ) | |
| and as a detective for Allegheny County; ) | |
| JOHN MARKLE, individually and as a detective ) | |
| for Allegheny County; ROBERT PAYNE, ) | |
| individually and as a detective for Allegheny ) | |
| County and SANFORD A. MIDDLEMAN, Esq., ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION**

CONTI, District Judge.

In this memorandum opinion, the court considers the motion (Docket No. 18) filed by defendant Sanford A. Middleman ("Middleman") seeking to dismiss the only claim asserted against him by plaintiff Drew Whtiley ("plaintiff") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) or in the alternative seeking that summary judgment be granted in his favor pursuant to Federal Rule of Civil of Procedure 56. Among other reasons asserted by Middleman for the court to grant him the relief that he is seeking are that this court lacks subject-matter jurisdiction over plaintiff's claim against him and that the claim against him is time-barred by the

applicable statute of limitations. Plaintiff disputes those assertions. The court determines, although it is a somewhat close question, that it may exercise supplemental jurisdiction over plaintiff's claim against Middleman and will deny the motion to dismiss raised under Federal Rule of Civil Procedure 12(b)(1). The court notified that parties that it would consider matters outside of the complaint in resolving the issue whether plaintiff's claim against Middleman is time-barred and the motion to dismiss raised under Federal Rule of Civil Procedure 12(b)(6) will be denied as moot. See Fed.R.Civ.P. 12(b). After the court notified the parties that it would resolve the issue whether plaintiff's claim against Middleman is time-barred, the parties fully briefed this issue. Because based upon the undisputed evidence of record plaintiff's claim against Middleman is time-barred, summary judgment will be granted in favor of Middleman.

**Factual and Procedural Background**

On March 26, 2007, plaintiff commenced this lawsuit against Allegheny County, Thomas M. Fitzgerald, individually and as a detective for Allegheny County; Robert Lazarro, individually and as a detective for Allegheny County; Herb Foote, individually and as a detective for Allegheny County; Lee Torbin, individually and as a detective for Allegheny County; John Markle, individually and as a detective for Allegheny County; Robert Payne, individually and as a detective for Allegheny County (the "Allegheny County defendants") and against Middleman. Plaintiff asserted federal and state law claims against the Allegheny County defendants including claims arising under 42 U.S.C. § 1983 for deprivation of a fair trial and liberty without due process. Plaintiff asserted a state law claim for professional negligence against Middleman. Plaintiff's claims arise from plaintiff's alleged unlawful conviction and incarceration for the

August 17, 1988 murder of Noreen Mallow. On May 1, 2006, plaintiff was exonerated of the murder by the Allegheny County Court of Common Pleas.

Plaintiff's claims against Middleman are contained in count III of the complaint. Plaintiff alleges that although Middleman was not plaintiff's attorney during plaintiff's criminal trial, Middleman represented plaintiff in the first of two petitions plaintiff filed for post-conviction relief (the "first PCRA petition"). (Compl. ¶15; Def.'s Mot. 2.) The first PCRA petition was filed by plaintiff *pro se* on February 23, 1993. (Def.'s Concise Statement ¶4, Ex. "A"; Pl.'s Responsive Concise Statement ¶4, Ex. "4".) In June 1995, Middleman was appointed by the court to represent plaintiff in connection with the first PCRA petition. On November 20, 1998, plaintiff's first PCRA petition was dismissed. (Def.'s Concise Statement ¶12, Ex. "K"; Pl.'s Responsive Concise Statement ¶12.)

On December 18, 1998, plaintiff wrote to the state trial judge referring to the dismissal of his PCRA petition on November 20, 1998. He noted that he did not receive the order dismissing his first PCRA petition until December 17, 1998. He stated:

> As you know I no [sic] nothing about the law, and I have no money for a [sic] attorney. You no [sic] I am fighting for my life, and I will be truly grateful if you appoint me a [sic] attorney so I don't lose my appeal rights to the Superior Court. . . . I need your help, so would you please appoint me and [sic] attorney.

(Def.'s Ex. "L".) On December 21, 1999, the state court judge reinstated plaintiff's right to appeal the denial of his first PCRA petition *nunc pro tunc* and appointed Robert Crisanti ("Attorney Crisanti") to represent him in connection with the appeal. (Def.'s Concise Statement ¶14, Ex. "M"; Pl.'s Responsive Concise Statement ¶14, Ex. "6".) On July 16, 2001, the Superior Court of Pennsylvania affirmed the dismissal of the first PCRA petition and on December 31,

3

2001, the Pennsylvania Supreme Court denied a petition for allowance of appeal. (Def.'s Concise Statement ¶15, Ex. "N"; Pl.'s Responsive Concise Statement ¶15.)

On October 29, 2002, plaintiff filed a second *pro se* PCRA petition, and on October 20, 2004, because plaintiff was unable to obtain a lawyer, the court appointed Scott Coffey ("Attorney Coffey") to represent plaintiff in connection with that second PCRA petition[1]. (Def.'s Concise Statement ¶¶16 and 18, Exs. "O" and "Q"; Pl.'s Responsive Concise Statement ¶¶16 and 18.) During the proceedings relating to plaintiff's second PCRA petition, only Attorney Coffey was listed as the "counsel of record." (Def.'s Ex. "N".) On July 7, 2005, plaintiff executed an acknowledgment for a motion for DNA testing. The motion was submitted on plaintiff's behalf by Attorney Coffey. In that motion Attorney Coffey described that after the first PCRA petition was dismissed by the state trial judge, new counsel was appointed. (Def.'s Ex. V at 5.)

In the complaint, plaintiff alleges that during Middleman's representation of plaintiff with respect to the first PCRA petition, Middleman recklessly and wantonly disregarded his duty to plaintiff by failing to communicate with plaintiff. Plaintiff asserts that Middleman failed to investigate properly the location of existing, yet lost, DNA evidence, which plaintiff claims that

---

[1] With respect to the date Attorney Coffey was appointed to represent plaintiff, there exists a minor discrepancy within the state court documents. In an order dated October 20, 2004, the state court judge, among other things, appointed Attorney Coffey to represent plaintiff in his PCRA petition. (Def.'s Ex. Q.) The court's order, however, was not received by the Clerk of Courts of Allegheny County until October 26, 2004. (Id.) The criminal docket sheet, which contains the entries related to plaintiff's underlying criminal case, indicates that plaintiff was not assigned an attorney until October 26, 2004. (Def.'s Ex. O.) In any event, for purposes of deciding defendant's motion for summary judgment, the exact date Attorney Coffey was appointed to represent plaintiff - whether October 20, 2004 or October 26, 2004 - is of no consequence.

Thomas M. Fitzgerald, Robert Lazarro, Herb Foote, Lee Torbin, John Markle, and Robert Payne who were Allegheny County Detectives, maliciously concealed. Plaintiff argues that Middleman's actions, and inaction, proximately caused plaintiff to suffer prolonged incarceration. Plaintiff alleges that Middleman negligently stipulated to an inferior form of DNA testing, and, but for that breach of Middleman's professional responsibility, plaintiff would have been subjected to a shorter term of imprisonment.

On June 28, 2007, Middleman filed the instant motion which is opposed by plaintiff. Among the issues raised by defendant are that this court lacks subject-matter jurisdiction over the state law claim asserted against him and that the claim asserted by plaintiff against Middleman is time-barred under the applicable statute of limitations. Each of these issues will be addressed.

## Standard of Review

A Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction raises the issue whether the court has the power to hear the matter before it. Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). The burden of establishing jurisdiction lies with the party seeking to invoke the court's jurisdiction. Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991); Mortensen, 549 F.2d at 891.

A Rule 12 (b)(1) motion to dismiss for lack of subject-matter jurisdiction may facially or factually challenge the court's jurisdiction. Mortensen, 549 F.2d at 891; Gould Electronics, Inc. v. U.S., 220 F.3d 169, 176 (3d Cir. 2000)(citing Mortensen, 549 F.2d at 891). In reviewing a facial attack, a court considers the allegations of the complaint and documents referenced therein and attached thereto in the light most favorable to the plaintiff. See Gould, 220 F.3d at 176;

PBGC v. White, 998 F.2d 1192, 1196 (3d Cir. 1993).² In reviewing a factual attack, the court may consider evidence outside the pleadings, including affidavits. See Gotha v. U.S., 115 F.3d 176, 178-79 (3d Cir. 1997).³ When a court's power to hear a case is at issue, a court is free to weigh the evidence regarding jurisdiction. Mortensen, 549 F.2d at 891-92.

Federal Rule of Civil Procedure 56© provides that summary judgment may be granted if, drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56©. A motion for summary judgment will not be defeated by the mere existence of some disputed facts, but will be defeated when there is a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 249. The court is to draw all reasonable inferences in favor of the nonmoving party. El v. Southeastern Pa. Transp. Auth., 479 F.3d 232 (3d Cir.2007)("In considering the evidence, the court should draw all reasonable inferences against the moving party."). The United States Court of Appeals for the Third Circuit

---

²A facial challenge is a technical defect that occurs when the allegations in the complaint do not sufficiently illustrate the court's jurisdiction. 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE §1350 (2d ed. 1990).

³A factual challenge is a substantive defect that occurs when the court lacks actual subject-matter jurisdiction regardless of the sufficiency of the allegations in the complaint. 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE §1350 (2d ed. 1990). In that instance, the court may consider evidence outside the complaint. Mortensen, 549 F.2d at 891.

recently stated:

> [I]f there is a chance that a reasonable factfinder would not accept a moving party's necessary propositions of fact, pre-trial judgment cannot be granted. Specious objections will not, of course, defeat a motion for summary judgment, but real questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof, will.

Id. at 238.

## Discussion

**I. Subject-matter jurisdiction over plaintiff's state law claim of professional negligence.**

As a threshold matter this court must determine whether it has subject-matter jurisdiction to consider plaintiff's claim against Middleman. Pursuant to Article III, section 2 of the United States Constitution, federal district courts have limited jurisdiction. Federal district courts have subject-matter jurisdiction over all civil actions that arise either (1) under the Constitution, laws or treaties of the United States (called federal question jurisdiction), or (2) between citizens of different states where the matter in controversy exceeds $75,000 (referred to as diversity jurisdiction). 28 U.S.C. §§ 1331-32. Plaintiff's claim against Middleman does not arise under federal law and there is no diversity of citizenship. Under those circumstances, this court does not have original jurisdiction to hear plaintiff's claim against Middleman. Federal district courts under certain circumstances may exercise supplemental jurisdiction over state law claims. 28 U.S.C. § 1367. Plaintiff argues that circumstances of this case warrant the exercise of supplemental jurisdiction. 28 U.S.C. §1367 provides:

> In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

In United Mine Workers v. Gibbs, 383 U.S. 715 (1966), the Supreme Court recognized that a district court may exercise supplemental jurisdiction over a state law claim so long as the state and federal claims in the relevant case "derive from a common nucleus of operative fact." Id. at 725; Lyon v. Whisman, 45 F.3d 758 (3d Cir. 1995).

There is no dispute that this court has subject-matter jurisdiction pursuant to 28 U.SC. § 1331 over the federal claims asserted against the Allegheny County defendants and pursuant to 28 U.S.C. § 1367 over the state law claims asserted against those defendants. Plaintiff and Middleman, however, disagree regarding whether the facts underlying the federal claims asserted against the Allegheny County defendants and the facts underlying the state law claim asserted against Middleman "derive from a common nucleus of operative fact" sufficient for this court to exercise supplemental jurisdiction over the claim against Middleman. Gibbs, 383 U.S. at 725. Middleman highlights the differences between the federal claims asserted against the Allegheny County defendants and the state law claim for professional negligence asserted against Middleman to demonstrate that those claims do not "derive from a common nucleus." Id. Plaintiff in the federal claims asserted against the Allegheny County defendants contends that those defendants violated plaintiff's constitutional rights by ignoring crucial evidence and failing properly to investigate the facts. Plaintiff also argues that the Allegheny County defendants were racially biased against plaintiff and that the actions of those defendants deprived him of a fair trial and of liberty without due process.

In contrast, the state law claim of professional negligence asserted against Middleman arose from Middleman's representation of plaintiff during the first PCRA petition. Middleman was not representing plaintiff during the criminal trial in which the actions of the Allegheny

8

County defendants were implicated. Middleman argues that under those circumstances the facts underlying the state law claim are not within the same nucleus as the factual background of the claims asserted against the Allegheny County defendants. Middleman points out that the proceedings that involved Middleman took place after the Allegheny County defendants' investigation, plaintiff's arrest, plaintiff's murder trial and plaintiff's conviction. Middleman argues that the distinction in the periods of time between the facts relating to the Allegheny County defendants and the facts relating to his alleged negligence in stipulating to an inferior method of DNA testing are sufficiently outside any common nucleus that this court should be precluded from exercising supplemental jurisdiction. Middleman also asserts that plaintiff's allegation that he deviated from the appropriate professional standard of care is a claim entirely separate from any constitutional violation asserted against the Allegheny County defendants.

Plaintiff asserts that there is a common nucleus between the federal claims asserted against the Allegheny County defendants and the state law claim asserted against Middleman because the alleged concealment of the DNA evidence, the alleged failure to make the most rudimentary search of the evidence and defendant's purported stipulation to an inferior method of testing DNA operate as the "common denominator to all of the named defendants in this case." (Pl.'s Mot. in Opp'n at 5.) Plaintiff contends that because evidence and testimony expected to be presented in this case will relate to the DNA evidence, judicial economy and convenience warrant the exercise of supplemental jurisdiction and for a single trial. Plaintiff supports his argument by pointing to a portion of Middleman's brief in which Middleman argues that if the Allegheny County defendant's intentionally concealed the DNA evidence that subsequently exonerated plaintiff, that concealment was beyond Middleman's reasonable control. (Pl.'s Mot.

in Opp'n, at 5; Def.'s Br. at 14 n2.) Plaintiff argues that judicial economy and convenience require that this case be tried in one forum.

This court has broad discretion when determining whether to exercise supplemental jurisdiction. See Stehney v. Perry, 101 F.3d 925, 939 (3d Cir.1996); Anserphone, Inc. v. Bell Atlantic Corp., 955 F.Supp. 418, 433 (W.D.Pa.1996). In reaching its decision, the court "should take into account generally accepted principles of judicial economy, convenience, and fairness to the litigants." Verizon Inc. v. Del. County, 983 F.2d 1277, 1284 (3d Cir. 1993) (citing Gibbs, 383 U.S. at 726). While the factual background of the federal claims deriving from the criminal trial may arguably, for the most part, fall outside of the scope of the facts existing with respect to the post-conviction matters involved in the state law professional negligence claim asserted against Middleman, there are some common factual matters which are relevant to the federal and the state law claims. Specifically, the common issues relate to the DNA evidence. The parties have extended considerable resources in fully briefing the matter relating to plaintiff's claims against Middleman. In light of the court's broad discretion to consider judicial economy, convenience and fairness, the court, while it is a somewhat close question, finds there is a sufficient common nucleus between the federal and state claims at issue for the court to exercise supplemental jurisdiction over the state law claim asserted against Middleman.

**II. Application of the relevant statute of limitations.**

Plaintiff and Middleman agree that plaintiff's claim for illegal malpractice against Middleman is governed by 42 PA. CONS. STAT. ANN. § 5524. Section 5524 provides that claims sounding in negligence are subject to a two-year statute of limitations. 42 PA. CONS. STAT. ANN.

10

§ 5524. Plaintiff and Middleman further agree that the appropriate starting point for a legal malpractice action arising from an underlying criminal representation commences at the "termination of the attorney-client relationship." Bailey v. Tucker, 621 A.2d 108, 116 (Pa.1993).[4] The crux of the dispute regarding the statute of limitations in this case is when the attorney-client relationship between plaintiff and Middleman terminated. Plaintiff and Middleman vigorously disagree about the timing of the termination of Middleman's representation of plaintiff.

There is no dispute that Middleman represented plaintiff during his first PCRA petition. Middleman contends that his relationship with plaintiff ended when the first PCRA petition was dismissed. Plaintiff contends Middleman continued to be a member of plaintiff's legal team throughout the first PCRA petition, the appeal related to that petition, and during plaintiff's second PCRA petition. Middleman argues that evidence of the cessation of his representation is reflected in the record by the appointment of Attorney Crisanti and the denial of plaintiff's petition for allowance of appeal by the Pennsylvania Supreme Court.

(a) Whether the attorney-client relationship between Middleman and plaintiff expired

---

[4] In the alternative, plaintiff asserts that Bailey v. Tucker is unconstitutional for being "violative of equal protection." Plaintiff bases this assertion on the instruction in that decision for courts to apply different accrual standards to legal malpractice claims depending upon whether the underlying action derived from criminal or civil litigation. Plaintiff claims that this differing treatment cannot be viewed as "rationally related to a legitimate state interest" because it places defendants "with the most to lose" in a perilous position. Plaintiff fails to recognize, however, that Bailey recognized for the first time under Pennsylvania law that criminal defense attorneys could be sued for malpractice at the time the attorney-client relationship terminates. In each of his PCRA petitions, plaintiff raised issues with respect to DNA testing. Even if plaintiff's cause of action for professional negligence was viewed under the standards for accrual set forth in a civil malpractice action, plaintiff's claim would be time-barred. Under these circumstances, Bailey does not evoke equal protection implications with respect to plaintiff's claim against Middleman.

upon the December 21, 1999 appointment of Attorney Crisanti

Plaintiff asserts that his claim against Middleman is timely because the attorney-client relationship between Middleman and him did not expire until plaintiff's exoneration in 2006. According to plaintiff, the statute of limitations did not begin to run on his professional negligence claim against Middleman until the time of his exoneration in 2006. Plaintiff contends that the halting of representation by Middleman in 1998/1999 as asserted by Middleman is not a formal termination of the attorney-client relationship. Plaintiff argues that an attorney has an absolute duty to seek leave of court in order to withdraw from representation in a criminal case, the attorney must provide adequate notice to the client of the withdrawal and the attorney must obtain court permission in order for the relationship to be terminated.

In support of plaintiff's argument, plaintiff cites Rule 120(B) of the Pennsylvania Rules of Criminal Procedure. Plaintiff argues that this rule creates an affirmative duty upon an attorney to make a formal motion to the court in order to withdraw. PA.R.CRIM.P.120(B). Plaintiff refers to the explanatory comment to Rule 120 to reinforce his position that there is an absolute requirement that an attorney formally withdraw with permission of the court before the attorney-client relationship can terminate. The comment states:

> Under paragraph (B)(2), counsel must file a motion to withdraw in all cases, and counsel's obligation to represent the defendant, whether as retained or court appointed counsel, remains until leave to withdraw is granted by the court.

*Id.* Plaintiff bolsters his argument by citing Commonwealth v. Champney, 783 A.2d 837 (Pa. Super. Ct. 2001). In Champney, the court stated: "Regardless of the legitimacy of counsel's grounds for withdrawal of counsel, formal leave of court is nonetheless clearly and unequivocally

required before counsel may be deemed to have withdrawn as counsel." Id. at 841.

Plaintiff asserts that Middleman's alleged cessation of representation is not the equivalent of a formal withdrawal. Therefore, plaintiff argues that the attorney-client relationship between Middleman the plaintiff continued until plaintiff's exoneration in 2006, approximately ten months before the filing of the present claim against Middleman. Plaintiff's argument turns solely upon whether's defendant's failure formally to withdraw results in the continuation of the attorney-client relationship until the exoneration of plaintiff in 2006.

If the court were to accept plaintiff's argument, the court would need to disregard a) record evidence demonstrating the cessation of legal representation as a matter of fact, b) the exhaustion of all appeals for the matter in which defendant was appointed to represent plaintiff and c) the subsequent appointment of new attorneys to represent plaintiff.

Defend argues that the court cannot disregard those matters. In Bailey, the Pennsylvania Supreme Court decided when a cause of action accrued for a plaintiff suing his criminal defense lawyer for malpractice, which occurred in an underlying criminal case. There, in a consolidated appeal, two plaintiffs, who had been previously convicted and sentenced to serve lengthy terms of imprisonment, asserted that their respective criminal defense lawyers committed legal malpractice, which resulted in a conviction for one plaintiff and a longer sentence for the other plaintiff. Using general principles of limitations law, the court determined when the statute of limitations began to accrue.

The court noted the differences between the occurrence rule and the discovery rule under Pennsylvania law. The occurrence rule is used to determine when the statute of limitations begins to run in a legal malpractice action. Under the occurrence rule, the statutory period

commences upon the happening of the alleged breach of duty. Bailey, 621 A.2d at 115-16. An exception to this rule is the equitable discovery rule which is applied when the injured party is unable, despite the exercise of due diligence, to know of the injury or its cause. Pocono Raceway v. Pocono Produce, Inc., 468 A.2d 468, 471 (1983). Lack of knowledge, mistake or misunderstanding, will not toll the running of the statute. Id. The court reasoned that:

> With regard to the respective statutes of limitations, the rule in this Commonwealth is that the statutory period commences at the time the harm is suffered or, if appropriate, at the time the alleged malpractice is discovered. In the context of a criminal malpractice action, the time when the harm is suffered will, in the typical case, be easily identifiable, i.e., the date of sentencing. However, since criminal sanctions are by their nature directed to the criminal defendant's actions, and thus those actions are presumed to be the legal cause of the harm suffered, the date a defendant becomes aware that his counsel may have been responsible for the harm will likely be harder to pinpoint. Nonetheless, it is necessary to establish a point from which the statute of limitations period will commence. The appropriate starting point is the termination of the attorney-client relationship, since at that point the aggrieved defendant is aware of the injury (i.e., the conviction), and is on clear notice to investigate any alternate cause of that harm which he believes to exist. In this regard the defendant is not unlike the medical patient who becomes aware of an injury and is then placed on notice to discover its cause.

Bailey, 621 A.2d at 115-16 (footnotes omitted).

In reaching its decision, the court, applying the occurrence rule, determined that, in a criminal case, the time of the harm was the date of sentencing. The court later utilized the discovery rule, which tolls the statute of limitations until the defendant became aware that his attorney was responsible for the harm suffered. The court specifically rejected the notion that the statute of limitations was tolled until the final resolution of all matters in the underlying criminal case. The court concluded that the statute of limitations begins to run when the attorney-client relationship was terminated.

The Pennsylvania Supreme Court also determined that an attorney-client relationship between the plaintiff and his counsel terminated when the plaintiff filed a petition to be represented by new counsel. Id. at 116. The court in Bailey recognized that the attorney-client relationship may cease when a plaintiff files a pro se motion alleging ineffective assistance of counsel. Id.

It is undisputed that plaintiff in December 1999 advised the state trial court that he was in need of representation and the he could not afford an attorney to represent him in the appeal relating to his first PCRA petition. On December 21, 1999, Attorney Crisanti was appointed by the state trial court to represent plaintiff in his appeal of the dismissal of his first PCRA petition. (Def.'s Concise Statement ¶ 14, Ex. "M".) The appointment affected a substitution of counsel. After there was a substitution, Middleman no longer represented plaintiff. Plaintiff, from his correspondence to the court, indicated he did not have counsel. Plaintiff sought and obtained new counsel. The substitution was necessitated because of plaintiff's request.

Plaintiff, on July 7, 2005, executed an acknowledgment for a motion for DNA testing. The motion was submitted on plaintiff's behalf by Attorney Coffey. In that motion Attorney Coffey described that after the first PCRA petition was dismissed by the state trial judge, new counsel was appointed. Attorney Coffey recognized that new counsel not additional counsel had been appointed to represent plaintiff in connection with the first PCRA petition. Under these circumstances, the termination of the attorney-client relationship between plaintiff and Middleman occurred on December 21, 1999, the date of the appointment of new counsel, Attorney Crisanti, to represent plaintiff. The application of the relevant statute of limitations to plaintiff's claim against Middleman results in the claim asserted in this case against Middleman

being time-barred.

        (b)       In the alternative, whether the statute of limitations commenced on December 31, 2001 upon the denial by the Pennsylvania Supreme Court of plaintiff's petition for allowance of appeal.

In the alternative, assuming that Middleman's representation of plaintiff continued after the appointment of Attorney Crisanti, Middleman argues that Rules 120(A)(4), 122(B)(2) and 904 of the Pennsylvania Rules of Civil Procedure contemplate that an attorney-client relationship cannot exist beyond the expiry of appeals relating to matter in which plaintiff is represented. Middleman argues that under no circumstances could the attorney-client relationship between plaintiff and him exist beyond the appeal of plaintiff's first PCRA petition becoming final. Rule 120(A)(4) provides: "an attorney who has been retained or appointed by the court shall continue such representation through direct appeal _or_ until granted leave to withdraw. . . ." PA.R.CRIM.P.120(A)(4) (emphasis added). Rule 122 provides: "the appointment shall be effective until final judgement, including any proceedings upon direct appeal." PA.R.CRIM.P. 122(b)(2). Rule 904 sets forth the procedure regarding the appointment and representation of counsel in post-conviction proceedings. The rule specifically provides that "appointment of counsel shall be effective throughout post-conviction proceedings, including any appeal from the disposition of the petition for post-conviction collateral relief." PA.R.CRIM.P. 904(F)(2).

While all three of these rules anticipate that an attorney's representation may encompass the pursuit of appeal, none contemplate that representation may continue after all appeals have been exhausted on the matter for which the attorney had been initially appointed. Here, Middleman was appointed to represent plaintiff in his first PCRA petition, which was appealed

16

to the Supreme Court of Pennsylvania. On December 31, 2001, the Supreme Court of Pennsylvania denied plaintiff's petition for allowance of appeal and the judgment became final on April 1, 2002.[5] The Pennsylvania Rules of Criminal Procedure do not impose an obligation upon an attorney to seek leave to withdraw after the exhaustion of all appeals relating to matter for which he was appointed to represent the client.

Plaintiff's contention that Middleman was "counsel of record" at all times for failure formally to withdraw is contrary to the public record upon which plaintiff relies. After Attorney Crisanti and Attorney Coffey were appointed to represent plaintiff, not one document filed contained Middleman's name or referenced his continued representation of plaintiff. During the proceedings relating to plaintiff's second PCRA petition, only Attorney Coffey's is listed as the "Counsel of Record" (See, Def's Ex. "N".) After the appointment of Attorney Coffey, Middleman was not served by the court or the district attorney with any documentation pertinent to plaintiff's case. Under these circumstances, no reasonable finder of fact could conclude that Middleman continued to represent plaintiff after April 1, 2002. Based upon the termination of the attorney-client relationship no later than April 1, 2002, the claim asserted by plaintiff against Middleman in this case is clearly time-barred.

---

[5] The parties argue about whether the judgment became final on December 31, 2001. On that date, the Pennsylvania Supreme Court denied plaintiff's petition for allowance of appeal. Plaintiff, however, did not seek further review. Accordingly, the decision regarding the first PCRA petition became final on or about April 1, 2002 (March 31, 2002 being a Sunday), upon expiration of the time to seek certiorari with the United States Supreme Court. See U.S.Sup.Ct.R. 13 (allowing ninety days to file petition for certiorari ); Commonwealth v. Boyd, 923 A.2d 513, 515 (Pa.Super.Ct. 2007) (defendant's judgment of sentence became final after the Pennsylvania Supreme Court denied allowance of appeal and the time for filing a petition for writ of certiorari to the United States Supreme Court expired).

*Conclusion*

Because no reasonable finder of fact could conclude that the attorney-client relationship between Middleman and plaintiff continued after April 1, 2002, the state law claim asserted by plaintiff against Middleman is time-barred due to the application of the relevant two-year statute of limitations. Under these circumstances, summary judgment must be granted in favor of Middleman.

By the court:

/s/ Joy Flower Conti
Joy Flowers Conti
United States District Judge

Date: March 24, 2008

cc: Counsel of record